**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| ) | Case No. 05-12654 |
| DONN L. TYNDALL, ) | |
| ) | |
| Debtor. ) | |
| ) | |
| ) | Adversary No. 05-30647 |
| SHARON TYNDALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DONN L. TYNDALL, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**<u>OPINION</u>**[1]

Before the Court is the Complaint filed by Sharon Tyndall (the "Plaintiff") against Donn L. Tyndall (the "Debtor") seeking a ruling that payments due are non-dischargeable pursuant to former sections 523(a)(5) and (15) of the Bankruptcy Code.[2] For the reasons stated below, the Court will grant judgment in favor of the Plaintiff.

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[2] Former sections 523(a)(5) and (15) of the Bankruptcy Code have been significantly amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The Debtor's case was filed before the effective date of the amendments and is, therefore, governed by the prior sections.

I.   BACKGROUND

The Plaintiff and Debtor were married for approximately twenty years.  On or about April 11, 2000, they executed a divorce separation agreement (the "Agreement"), which was incorporated into their divorce decree entered on January 23, 2002.  Pursuant to the Agreement, the Plaintiff kept the marital home and the Debtor retained his hair salon business (the "Business") and its related real estate, including several rental properties.  The Debtor agreed to pay the Plaintiff $500 per week for twenty years "in lieu of her interest in [the] Business" so long as she resided in the marital home.  The Plaintiff was responsible for all the expenses of the marital home, including the mortgage.

The Debtor made the agreed payments to the Plaintiff until October, 2005.  On September 16, 2005, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code.  On December 19, 2005, the Plaintiff filed a complaint against the Debtor objecting to the dischargeability of the payments due to her under the Agreement.  After discovery was conducted, trial was scheduled for November 20, 2006.  On November 16, 2006, the Debtor requested a continuance of the trial to January or February, which was opposed by the Plaintiff.  The Court granted the motion, but rescheduled the trial for December 5, 2006.

On December 5, 2006, the Plaintiff appeared[3] but the Debtor and Debtor's counsel failed to appear.[4] The Court permitted the Plaintiff to proceed and the Plaintiff testified and offered exhibits in support of her Complaint. The Court held the matter under advisement.

II. JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(1). This proceeding is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (I) & (O).

III. DISCUSSION

    A.    Former Section 523(a)(5)

The Plaintiff contends that the $500 per week payment due to her is non-dischargable pursuant to former section 523(a)(5), which provided that

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt -
>     (5) to a spouse, former spouse, or child of
>     the debtor, for alimony to, maintenance for,
>     or support of such spouse or child, in
>     connection with a separation agreement,
>     divorce decree, or other order of a court of
>     record, determination made in accordance with
>     State or territorial law by a governmental

---

[3] The Plaintiff appeared without counsel, having permitted her counsel to withdraw because she could not afford the expense.

[4] To date, the Debtor has failed to explain his failure to appear.

    unit, or property settlement agreement, but
    not to the extent that -
      . . .
     (B) such debt includes a liability
     designated as alimony, maintenance,
     or support, unless such liability
     is actually in the nature of
     alimony, maintenance, or support.

11 U.S.C. § 523(a)(5) (amended 2005).

  The Agreement states that the payments due to the Plaintiff are not alimony. The Plaintiff testified that the Agreement so stated only so that she would not be obligated to pay taxes on it, thereby lowering the amount that the Debtor had to pay her. The Plaintiff asserts that the payments were for her support. She testified that, except for a couple of years prior to and early in the marriage, she did not have a job but stayed home with her minor child and did some bookkeeping for the Business.

  The language of the Agreement does not seem to support this argument. As noted above, the Agreement expressly states that the payments are not alimony. It further states that the payments are "in lieu of her interest in [the] Business."

  The Third Circuit, however, has held that the language of an agreement is not dispositive in determining the dischargeability of obligations under former section 523(a)(5). <u>Gianakas v. Gianakas (In re Gianakas)</u>, 917 F.2d 759, 762 (3d Cir. 1990) (concluding, based on the express language of the statute, that "the court must look beyond the label attached to an obligation by a settlement agreement to examine its true nature."). The

Third Circuit articulated three factors to consider in determining the purpose of the obligation:

> First, the court must examine the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary. . . .
> Because the language of the agreement alone may not provide a sufficiently conclusive answer as to the nature of an obligation, the second indicator to which we must look to assist in ascertaining the parties' intent is the parties' financial circumstances at the time of the settlement. . . .
> Third, the court should examine the function served by the obligation at the time of the divorce or settlement. An obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support.

Id. at 762-63.

In a case remarkably similar to this case, the Third Circuit confirmed the conclusion of the Bankruptcy Court, in applying Gianakis, that regardless of the labels used in the marital settlement agreement, all the payments due by the debtor to his ex-wife were structured and designed as payments in the nature of alimony, maintenance or support and were thus non-dischargeable. See, e.g., Gunn v. Froncillo (In re Froncillo), 296 B.R. 138, 144-45 (Bankr. W.D. Pa. 2003), aff'd 2005 WL 3067830 (3d Cir. 2005). The Bankruptcy Court in Froncillo found that

> At the time of execution of the Settlement Agreement, Debtor was a successful entrepreneur operating business interests with earnings of $132,000 per year. [His ex-wife] had not worked outside the home and had no training or marketable skills to enable her to find employment that would generate an income much beyond minimum wage. When the Agreement was

5

>     executed, [his ex-wife] was earning $150 per week.
>         The function of the Separation Agreement was to
>     allow the Debtor to maintain his business interests and
>     continue to earn a significant income and to use that
>     income, in part, to provide enough funds for [his ex-
>     wife] to maintain a home, reliable transportation and
>     pay living expenses.

296 B.R. at 144. As a result the Bankruptcy Court concluded that the Debtor was obligated to continued to pay his ex-wife $1,500 per month for three years and $500 per month for the following eight years. Id. See also, McDonough v. Federer (In re Federer), Case No. 02-34782, Adv. No. 03-0038, 2004 WL 231008 at *4 (Bankr. E.D. Pa. Jan. 9, 2004) (concluding that award was in nature of alimony given modest income of ex-wife); Lane v. Lane (In re Lane), 267 B.R. 679, 685-86 (Bankr. D. Del. 2001) (concluding that even though plaintiff was not entitled to alimony under state law, the obligations of the debtor to her were in the nature of support because of the disparate earning capacity of the parties); Pollock v. Pollock (In re Pollock), 150 B.R. 584, 590-91 (M.D. Pa. 1992) (concluding that $115,000 property settlement payment was non-dischargeable under former section 523(a)(5) because it was in the nature of alimony, support or maintenance given the ex-wife's lack of employment).

    Applying the Gianakis standard to the case at bench convinces the Court that the obligation is in the nature of support. Although the Agreement states that the payments are in lieu of the Plaintiff's interest in the Business property, the

Agreement also gave the Plaintiff the marital home in lieu of the Business real estate.  In addition, at the time of the Agreement, the Debtor was generating substantial income from operating the Business and the Plaintiff, in contrast, was unemployed and had been unemployed except as a homemaker for almost twenty years.  Clearly, the parties contemplated that the payments would be necessary for the Plaintiff to meet the necessary expenses of living.  Consequently, the Court concludes that considering the circumstances at the time the Agreement was executed, the obligation of the Debtor to pay the Plaintiff $500 per week is non-dischargeable pursuant to former section 523(a)(5).

    B.   <u>Former Section 523(a)(15)</u>

Alternatively, if the Court determines that the obligation is not covered by former section 523(a)(5), the Plaintiff asserts that it is non-dischargeable pursuant to former section 523(a)(15), which provided:

> (a) A discharge under section 727 . . . of this title
> does not discharge an individual debtor from any debt -
>     (15) not of the kind described in paragraph
>     (5) that is incurred by the debtor in the
>     course of a divorce or separation or in
>     connection with a separation agreement,
>     divorce decree or other order of a court of
>     record, a determination made in accordance
>     with State or territorial law by a
>     governmental unit; unless
>         (A) the debtor does not have the
>         ability to pay such debt from
>         income or property of the debtor
>         not reasonably necessary to be
>         expended for the maintenance or
>         support of the debtor or a

>           dependent of the debtor and, if the
>           debtor is engaged in a business,
>           for the payment of expenditures
>           necessary for the continuation,
>           preservation, and operation of such
>           business; or
>           (B) discharging such debt would
>           result in a benefit to the debtor
>           that outweighs the detrimental
>           consequences to a spouse, former
>           spouse, or child of the debtor.

11 U.S.C. § 523(a)(15) (amended 2005).

Former section 523(a)(15) was added to the Bankruptcy Code by the 1994 amendments. Courts have concluded that the addition created a presumption that divorce-related obligations are not dischargeable in bankruptcy. See, e.g., Shellem v. Koons (In re Koons), 206 B.R. 768, 771 (Bankr. E.D. Pa. 1997); Cleveland v. Cleveland (In re Cleveland), 198 B.R. 394, 397 (Bankr. N.D. Ga. 1996). The majority of courts have concluded that once the creditor establishes that the obligation is divorce-related, the burden of proving the applicability of the exceptions in subsection (A) or (B) shifts to the debtor. See, e.g., In re Crosswhite, 148 F.3d 879, 884-85 (7th Cir. 1998); Gamble v. Gamble (In re Gamble), 143 F.3d 223, 226 (5th Cir. 1998); Laddeck v. Laddeck (In re Laddeck), Adv. No. 00-0426, 2001 WL 423026 at *6 (Bankr. E.D. Pa. Apr. 11, 2001); In re Leonard, 231 B.R. 884, 888 (E.D. Pa. 1999); Fronheiser v. Papi (In re Papi), Adv. No. A-98-288, 2000 WL 33712308 at *2 (Bankr. D. Del. July 28, 2000); Koons, 206 B.R. at 772-73; Cleveland, 198 B.R. at 397-98. The

minority of courts have concluded, however, that the creditor always has the burden of proving all the elements of former section 523(a)(15). See, e.g., Konick v. Konick (In re Konick), 236 B.R. 524, 526-27 (1st Cir. BAP 1999); Marquis v. Marquis (In re Marquis), 203 B.R. 844, 852 (Bankr. D. Me. 1997). See also Garrity v. Hadley (In re Hadley), 239 B.R. 433, 437 (Bankr. D.N.H. 1999) (concluding that the creditor bears the burden of production of evidence and persuasion on all elements of § 523(a)(15) except that the debtor has the burden of production on his ability or inability to repay the obligation).

    The Court agrees with the Hadley analysis. A creditor who seeks to except its debt from discharge has the ultimate burden of persuading the Court that the elements of the discharge exception are met. Under former section 523(a)(15), however, the Debtor is in the best position to prove what the Debtor is able to pay because evidence of that is usually within his/her control. Cf., Lindahl v. Office of Pers. Mgmt., 776 F.2d 276, 280 (Fed. Cir. 1985) (holding that "the party with the best knowledge" normally has the burden of proof); Merriam v. Venida Blouse Corp., 23 F. Supp. 659, 661 (D.N.Y. 1938) (concluding that "the party who is in the best position to know the facts bears the burden of explanation.").

    In this case, the Court concludes that the Plaintiff has met her burden of production and persuasion under former section

523(a)(15). She has established that the obligation arises under the Agreement which was entered in connection with the parties' divorce. To the extent that the obligation is not alimony, maintenance or support, there is a presumption that it is not dischargeable under former section 523(a)(15).

To determine whether the Debtor has the ability to repay an obligation under former section 523(a)(15)(A), courts have considered the following factors:

> First, the Court will have to determine the amount of the debts which a Creditor is seeking to have held nondischargeable and the repayment terms and conditions of those debts.
> Second, the Court will have to calculate the Debtor's current income and the value and nature of any property which the Debtor retained after his bankruptcy filing.
> Third the Court will have to ascertain the amount of reasonable and necessary expenses which the debtor [sic] must incur for the support of the Debtor, the Debtor's dependents and the continuation, preservation and operation of the Debtor's business, if any.
> Finally, the Court must compare the Debtor's property and current income with his reasonable and necessary expenses to see whether the Debtor has the ability to pay those obligations.

Fronheiser, 2000 WL 33712308 at *4 (quoting In re Smither, 195 B.R. 102, 108 (Bankr. W.D. Ky. 1996)).

The Plaintiff presented compelling evidence that the failure to receive the weekly payments from the Debtor will be devastating to her. Except for working for the Debtor in the Business, she has not been employed for over twenty years. She is currently unemployed with no prospects of employment. She is in counseling and on medication. Although she owns the home in

10

Laurel, Delaware, it is encumbered by a mortgage and the Agreement relieves the Debtor of any obligation to pay her if she sells it.

In this case, the amount of the obligation is $500 per week until 2020. Because the Debtor has the burden of production of evidence on the issue of his ability to pay and the effect on him if required to pay, his failure to appear at the trial and present evidence compels the Court to conclude that the Plaintiff is entitled to judgment in her favor on this count as well.

Nonetheless, the Plaintiff presented compelling evidence of the Debtor's ability to repay her. On the issue of the Debtor's income, the Plaintiff testified that, contrary to the Debtor's deposition testimony, he typically received $50-100 in tips a day and received a large amount of his income in cash, which he did not report on his tax returns.

With respect to the issue of reasonable expenses of the Debtor and the Business, the Plaintiff presented compelling evidence that many of the expenses of the Debtor are not necessary and are in fact extravagant. The Plaintiff testified that the Debtor has gone on several vacations. The Debtor pays $576 per month to drive a new luxury car. (Ex. P-11.)

The Debtor is living rent-free in a house owned by his new

wife.[5]  The Debtor paid the down payment of $14,000 for that house and paid for extensive renovations with funds from the Business.  (Exs. P-13, P-17 & P-5 at 60.)  Two weeks after the Debtor filed for bankruptcy, the house was featured on a house tour, which highlighted the renovations that had been done and the antiques it contained.  (Ex. P-16.)

Based on all the evidence presented, the Court is convinced that the obligation in question is debt arising from the divorce of the Plaintiff and the Debtor.  The Court further finds that the Debtor has the ability to repay that debt.  Finally, the Court concludes that the burden on the Debtor to repay the debt is not more substantial than the devastating effect it will have on the Plaintiff if it is not repaid.  Consequently, the Court concludes that the obligation owed to the Plaintiff is not dischargeable pursuant to former section 523(a)(15).

IV.  CONCLUSION

For the foregoing reasons, the Court concludes that the obligation owed by the Debtor to the Plaintiff is not dischargable pursuant to former sections 523(a)(5) and (15) of the Bankruptcy Code.  The Court will, accordingly, grant judgment

---

[5] At the meeting of creditors, the Debtor testified contradictorily that he lives in a trailer near the Business (p. 16) and that he lives in a house with his new wife (p. 13).  (Ex. P-3.)

in favor of the Plaintiff.

An appropriate order is attached.

BY THE COURT:

*Mary F. Walrath*

Dated: January 19, 2007          Mary F. Walrath
United States Bankruptcy Judge